**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID GONZALEZ,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:21-cv-1166** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WARDEN FCI SCHUYLKILL,** | : | |
| **Respondent** | : | |

# MEMORANDUM

On June 1, 2020, *pro se* Petitioner David Gonzalez ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina. (Doc. No. 1.) Petitioner challenges the decision of a Disciplinary Hearing Officer ("DHO") who found him guilty of violating Code 199. (*Id.*) When Petitioner filed his § 2241 petition, he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). (*Id.* at 2.) The incident report in question, however, was issued while Petitioner was incarcerated at FCI Estill in South Carolina.

On February 9, 2021, the District of South Carolina granted Petitioner leave to proceed *in forma pauperis*. (Doc. No. 12.) On June 30, 2021, that court

transferred Petitioner's § 2241 petition to this Court for further proceedings. (Doc. No. 18.) On July 1, 2021, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 22.) After receiving an extension of time (Doc. Nos. 23, 24), Respondent filed his response on August 4, 2021 (Doc. No. 25). Petitioner's § 2241 petition is, therefore, ripe for disposition.

## I. BACKGROUND

On September 18, 2019, at approximately 4:30 p.m., Officer Eady heard "a loud screaming noise coming from cell C02-224L" at FCI Estill. (Doc. No. 25-1 at 15.) Officer Eady observed Petitioner "underneath his bunk kicking and screaming." (*Id.*) Petitioner was placed in hand restraints, and he was observed to have slurred speech and difficulty maintaining his balance. (*Id.*) Petitioner was unable to answer Officer Eady when asked if he had smoked any drugs. (*Id.*) Petitioner was escorted to medical, where he was asked to provide a urine sample and was given a breathalyzer test. (*Id.*) Both resulted in negative findings. (*Id.*)

A medical assessment indicated that Petitioner was stumbling while walking and was "slow to sit down and seem[ed] unsure of how to sit in the chair." (*Id.*) When a blood pressure cuff was used, Petitioner "began screaming about the handcuff being too tight, [but] when it was removed to be loosened [he] continued to scream about it being too tight even though it was not secured at the time." (*Id.*)

Petitioner was "unable to answer questions appropriately." (*Id.*) Medical noted that Petitioner had no medical conditions and took no prescription medication that would elicit this behavior. (*Id.*)

Later that day, Officer Eady issued Incident Report 3305800, charging Petitioner with a violation of Code 199, disruptive behavior, most like Code 112, use of narcotics, marijuana, drugs, or alcohol. (*Id.*) Petitioner received a copy of the Incident Report on September 19, 2019. (*Id.*) When the Incident Report was delivered to Petitioner, he was advised of his rights, including his right to remain silent. (*Id.* at 17.) Petitioner stated that he had eaten some food that made him act the way he did. (*Id.*)

The Incident Report was forwarded to the Unit Discipline Committee ("UDC") for further action. (*Id.*) On September 25, 2019, Petitioner appeared before the UDC for a hearing, at which time he stated that he was on medication at the time of the incident. (*Id.* at 16.) The UDC advised him of his rights. (*Id.* at 16, 24.) At that time, Petitioner requested that Mrs. J. Brown represent him at his DHO hearing. (*Id.* at 23.) The UDC referred the Incident Report to the DHO. (*Id.* at 16.)

Petitioner appeared before the DHO on October 9, 2019. (*Id.* at 10.) Although Petitioner had previously requested a staff representative, he waived his right to such

at the DHO hearing. (*Id.* at 10, 22.) Petitioner waived his right to call witnesses. (*Id.* at 10.) Petitioner provided the following statement:

> I am not guilty. I went to work and fell. I took too much medication. I had a big knot on my head, and it was bruised. I took 2 or 3, a double dose of my prescribed medication. They are all for pain except cholesterol and heart burn. I don't recall anything. When I came to, I didn't fight them. I told them I was alright. He cuffed the right side more than the left. It was a wound, so it was still hurting. I was not getting too loud.

(*Id.*)

The DHO found the charge of Code 199 to be supported by the greater weight of the evidence. (*Id.* at 12-13.) In doing so, the DHO considered the Incident Report, Petitioner's verbal and written statements, the memorandum written by Lieutenant Slingerland, Petitioner's clinical records for September 18, 2019, and the Chain of Custody Report. (*Id.* at 11.) The DHO sanctioned Petitioner with thirty (30) days of disciplinary segregation, disallowance of forty-one (41) days of good conduct time, and loss of commissary and visitation privileges for six (6) months. (*Id.* at 13.) Petitioner received a copy of the DHO report on October 22, 2019. (*Id.* at 14.) Petitioner subsequently appealed the DHO's decision to the Bureau of Prisons ("BOP")'s regional office; however, his appeal was rejected as untimely. (Doc. No. 1-1 at 1.)

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that his due process rights were violated because there was not sufficient evidence to support a finding that he violated Code 199. (*Id.* at 4.) He asserts that the direct evidence obtained—the negative urinalysis and breathalyzer—support his claim of insufficient evidence. (*Id.*) Petitioner maintains that the symptoms noted are not necessarily indicative of drug use because feelings of anxiety and depression "can become overwhelming and may lead to irrational behavior and sometimes violence." (*Id.* at 4-5.) He also contends that his medications "do cause dizziness, balance and coordination issues, tremors, and double vision." (*Id.* at 5.) As relief, Petitioner requests that the Incident Report be expunged, and his good conduct time be restored. (*Id.* at 9.)

## II. DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; and (2) he received due process before and during his DHO hearing. (Doc. No. 25 at 3.) The Court considers each argument in turn.

### A. Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a

petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate staff member. *Id.* § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days

"following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. *Id.* § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." *Id.*

In the instant case, the record reflects that Petitioner appealed the DHO's decision to the BOP's Southeast Regional Office. (Doc. No. 1-1 at 1.) The Southeast Regional Office received his appeal on November 19, 2019, and rejected it as untimely on April 7, 2020. (*Id.*) The reason given was that a regional appeal (BP-10) must be received within twenty (20) days of receipt of the DHO report, and that such time includes mail time. (*Id.*)

Petitioner asserts that his BP-10 should have been considered timely filed because he delivered it to prison staff within the 20 day limitation period, "as per the . . . mailbox rule." (Doc. No. 1 at 9.) He maintains that he "has exhausted the administrative remedy procedures to the best of his ability." (*Id.* at 9-10.) Even assuming *arguendo* that the prison mailbox rule applies to the BOP's administrative

remedy program,[1] Petitioner never appealed the rejection of his BP-10 to the Central Office by filing a BP-11. Petitioner, therefore, did not exhaust his administrative remedies with respect to the DHO's decision. For that reason alone, his § 2241 petition must be denied. Nevertheless, the Court considers the merits of his due process claim below.

**B. Merits of Petitioner's Claim**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

---

[1] *See Trotman v. Smith*, 796 F. App'x 764, 766 & n.4 (3d Cir. 2020) (citing BOP Program Statement 1300.16 to note that the deadlines provided in 28 C.F.R. § 542.15 "specify the date of the Appeal's receipt in the regional office or the Central Office. The deadlines have been made deliberately long to allow sufficient mail time."). This Court has previously concluded that the prison mailbox rule does not apply to BP-10 administrative remedy forms. *See Schreane v. Thomas*, No. 3:14-cv-246, 2014 WL 5493190, at *4 (M.D. Pa. Oct. 30, 2014); *Wall v. Holt*, No. 1:06-cv-194, 2007 WL 89000, at *3-4 (M.D. Pa. Jan. 9, 2007).

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq*., and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in

the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

**1. Petitioner Received His Due Process Rights**

Petitioner received his procedural due process rights under *Wolff* and the BOP regulations. The record reflects that Petitioner received a copy of the Incident Report on September 19, 2019, and the hearing before the DHO was held on October 9, 2019. (Doc. No. 25-1 at 10.) Although Petitioner initially requested a staff representative, he waived his right to a representative at his DHO hearing. (*Id.* at 10, 22.) Petitioner waived his right to call witnesses. (*Id.* at 10.) Moreover, Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on October 22, 2019. (*Id.* at 14.) Thus, the Court finds that Petitioner received all the procedural due process procedures to which he was entitled.

**2. The DHO's Decision Was Based on Sufficient Evidence**

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO's report, a copy of Petitioner's written statement, the clinical encounter report from Health Services' examination of Petitioner on September 18, 2019, and Lieutenant Slingerland's memorandum regarding the negative results of Petitioner's breathalyzer. (Doc. No. 25-1.) These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his decision finding Petitioner guilty of Code 199:

> On October 9, 2019, the DHO found that you did commit the prohibited act of Code 199, Disruptive Conduct Most Like Code 112, Use of narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.
>
> You originally requested J. Brown as a staff representative; however, you signed a new form at the DHO hearing indicating you wanted to waive her as a staff representative.
>
> This decision is based on the statement by the reporting officer, A. Eady. On Wednesday, September 18, 2019, at approximately 4:30 p.m., after conducting the 4:00 p.m. count, I heard a loud screaming noise coming from cell C02-224L. Once I got to the cell, I noticed [Petitioner] underneath his bunk kicking and screaming. Once staff arrived, [Petitioner] was placed in hand restraints. [Petitioner] had slurred speech and was unable to answer me when I asked if he had smoked any drugs, also having difficulty maintaining his balance. [Petitioner] was escorted to medical for an assessment. [Petitioner] was given a breathalyzer test with negative results. He was then asked to provide a urine sample which also resulted in negative findings. A medical assessment was conducted which indicated, inmate presented to health services upon arrival inmate is being escorted by compound officers and is seen stumbling while walking. Inmate is slow to sit down and seems unsure of how to sit in the chair. Vitals obtained, BP within normal limits inmate is tachycardia at this time. While the BP cuff was inflated inmate began screaming about the handcuff being too tight, when it was removed to be loosened the inmate continued to scream about it being too tight even though it was not secured at the time. Inmate is not oriented to place or time, he is unable to answer questions appropriately. Inmate escorted to special housing without incident. TOYO. Inmate has no medical conditions that would elicit this behavior. Inmate has no prescription medications that would elicit this behavior. In my professional opinion inmate is under the influence of an illicit substance.

Your clinical encounter was used to determine you were not prescribed any medication, nor did you have any medical conditions to make you act as if you were under the influence of drugs. The paramedic also believed from her medical experience your behavior was due to illegal drug use.

The memorandum from Lieutenant Slingerland and Chain of Custody from Officer O. Johnson were used to determine you were given a breathalyzer and urinalysis with negative results.

When you were given an opportunity to make a statement you said, I am not guilty. I went to work and fell. I took too much medication. I had a big knot on my head, and it was bruised. I took 2 or 3, a double dose of my prescribed medication. They are all for pain except cholesterol and heart burn. I don't recall anything. When I came to, I didn't fight them. I told them I was alright. He cuffed the right side more than the left. It was a wound, so it was still hurting. I was not getting too loud.

Your written statement indicates you take five different medications. On Monday you fell from a four step ladder at work, and both medical and safety documented the fall. On Wednesday, you got locked up. On Friday, you fell out of the top bunk and hurt your toe, but medical said it would heal by itself. You were then moved to another cell, and your cellmate gave you the bottom bunk. You do not have a history of using drugs; consequently, you are not eligible for RDAP. You have had the best jobs on the compound and other inmates tried to get you in trouble to get your job.

Your documentation indicates Meloxicam can include upset stomach, nausea, gas, vomiting, heartburn, diarrhea, constipation, dizziness, cold/flu symptoms. Oxcarbazepine side effects include dizziness, drowsiness, tiredness, balance or coordination problems, nausea, vomiting, tremors or shaking, double vision or rash.

The DHO based the decision on the greater weight of the evidence provided by the officer's report, memorandum, chain of custody, clinical encounter, and your statement. The DHO considered your

> statement you were acting this way because you took your medication in a double dose; you don't have a history of drug use; you have good jobs; you fell twice as documented by medical and safety; you did not fight staff when you came to; and you were still screaming over the cuffs because it was a wound and hurt. The DHO also considered the side effects of your medication. The DHO finds your explanation as to why you were acting in this behavior as nothing more than an attempt to distance yourself from the conduct in order to avoid the repercussions. The paramedic was specific when stating your bizarre behavior was not related to your medication or medical condition. She knew you had fallen earlier in the week, and knew what medication you were prescribed. The documentation you provided did not state anything about making you crawl under a bed, kick and scream, have slurred speech, and complain of nonexistent pain. In fact, your documentation states you would become tired, quite the opposite of what the officer described. Having good jobs, no prior history of drug use, or not fighting staff would not mean you did not do drugs this time. The Federal Bureau of Prisons has a zero tolerance against drugs and alcohol. Since staff did not have a lab test to confirm your drug use, the charge is correct as disruptive behavior most like use of drugs.
>
> Based on the evidence provided by the officer's report, memorandum, chain of custody, clinical encounter, and your statement, the DHO concluded that Code 199, Disruptive Conduct, most like Code 112, Use of Drug, was warranted and appropriate.

(Doc. No. 25-1 at 12-13.) Moreover, the DHO explained the imposed sanctions, stating:

> The action/behavior on the part of any inmate to use/possess/introduce drugs or alcohol threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. The mere presence of drugs/alcohol in a correctional facility creates an environment conduc[ive] to violence. In the past, inmates under the influence of drugs/alcohol have become violent towards others, which cannot and will not be tolerated. The sanctions imposed by the DHO

> were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> Good conduct time was disallowed because of the severity of the offense and to deter this activity in the future. It is apparent your conduct reflects poor institutional adjustment and does not warrant the same consideration for good conduct time as those inmates following the rules and regulations of the Bureau of Prisons. This is also a mandatory sanction for your sentencing guidelines.
>
> The sanction for disciplinary segregation was imposed due to the severity of your offense. It is apparent that your adjustment in population has been poor up to this point. Hopefully, this sanction will influence your future decisions to commit an offense such as this.
>
> The sanction for loss of commissary was imposed due to your poor institutional adjustment and behavior. Privileges are meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self, or others. This sanction has been imposed to correct the present inappropriate behavior and deter future behavior of this type. The DHO hopes that the sanctions will motivate you toward more self-discipline in the future.
>
> The sanction imposed involving the loss of visiting privilege was taken to enforce the standard of inmates being held responsible for their actions. It is believed, and past evidence has supported, that drug contraband is introduced into the inmate population through the inmate visiting room. The DHO found that drugs and other contraband are not given to inmates through authorized channels, and, therefore, must be introduced from outside elements such as inmate visitors.

(*Id.* at 13.)

Petitioner suggests that the evidence was insufficient to support the DHO's finding because the only direct evidence—the negative urinalysis and breathalyzer

screenings—support his claim for relief. (Doc. No. 1 at 4.) Petitioner alleges that the symptoms noted are not necessarily indicative of drug use and instead could be signs of depression and anxiety. (*Id.* at 4-5.) He argues that "[p]erception of pain and anxiety are a matter of individual determination." (*Id.* at 5.) Petitioner also maintains that his medications "do cause dizziness, balance and coordination issues, tremors, and double vision," as well as nausea and heartburn. (*Id.*) Overall, Petitioner asserts that his "physical pain, in conjunction with the fear, anxiety, and despair associated with long terms of incarceration, [led] to his behavior as reported." (*Id.* at 6.)

When an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56); *see also Donahue*, 398 F. App'x at 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"). In any event, the record before the Court refutes Petitioner's claim that the DHO's decision was based upon insufficient evidence. The DHO considered, *inter alia*, the clinical encounter report completed by NRP C. Howard on September 18, 2019. (Doc. No. 25-1 at 19-20.) NRP C. Howard conducted an assessment of

Petitioner and reviewed his medical records, concluding that he had no medical conditions and was not prescribed any medications that would cause the behavior noted in the Incident Report. (*Id.* at 20.) In NRP C. Howard's opinion, Petitioner was "under the influence of an illicit substance." (*Id.*) In sum, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of a violation of Code 112. *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"); *see also Brown v. Quay*, No. 1:20-cv-1463, 2020 WL 5946956, at *5 (M.D. Pa. Oct. 7, 2020 (rejecting petitioner's assertion that the evidence was insufficient to find him guilty of a Code 112 violation because his prescribed medication made him appear intoxicated); *Wyckoff v. White*, No. 1:20-cv-642, 2020 WL 3265465, at *6 (M.D. Pa. June 17, 2020) (rejecting petitioner's assertion that the evidence was insufficient to find him guilty of a violation of Code 112 because the medications he was prescribed could cause seizures). Accordingly, the Court will deny his § 2241 petition.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner failed to exhaust his administrative remedies, that he was accorded all of his due process rights under

*Wolff* and the BOP regulations, and that there was some evidence supporting the DHO's decision. Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: August 25, 2021